IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILMA NALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:16-cv-391-WHA-SRW |
| | ) | (WO) |
| CORIZON HEALTH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause is before the court on the Plaintiff's Motions to Strike (Doc. # 20, 23) certain paragraphs from affidavits submitted by Jessica Duffell ("Duffell") in support of the Defendant's Motion for Summary Judgment, together with briefing in support of and in opposition to the Motions. For the reasons to be discussed, the Plaintiff's Motions to Strike are due to be DENIED.

**II. DISCUSSION**

This case arises out of the termination of Plaintiff, Wilma Nalls, who was previously employed by Defendant Corizon Health, Inc. In her Complaint, Nalls alleges various claims for race and age discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., respectively. Specifically, Nalls brings claims of hostile work environment (Count I), disparate treatment (Count II), age discrimination (Count III); and retaliation (Count V). (Doc. # 1).

On June 5, 2017, Corizon filed a Motion for Summary Judgment (Doc. # 14), submitting various exhibits as evidence in support of its Motion, including an affidavit submitted by Duffell,

Nalls's direct supervisor (Doc. # 14-7). Nalls later responded to the Motion (Doc. # 18) and Corizon replied (Doc. # 22). In support of Corizon's reply, Corizon submitted a supplemental affidavit from Duffell (Doc. # 22-1). Nalls has filed two Motions to Strike seeking to exclude certain portions of each of Duffell's affidavits. The court will examine each of Nalls's objections as they relate to each affidavit, in turn.

### A. Duffell's First Affidavit (Doc. # 14-7)

As to Nalls's first Motion, Nalls seeks to strike paragraphs 8, 10, 12, 13, 16, 17, 20, and 30 from Duffell's first affidavit (Doc. # 14-7).

First, Nalls claims that paragraph 8 is contradictory to her deposition testimony, and is therefore due to be stricken.[1] Paragraph 8 states:

> 8. As the HAS I did not, and do not, have the ultimate authority to terminate Ms. Nalls or any other employee of Corizon at the Bullock Correctional Facility. However, I, as the Health Services Administrator, and Dorothy Price, as the Director of Nursing ("DON"), both made the recommendation to the interim Director of Operations, Peggy Minyard, and Ken Dover, the Vice President of Operations for Corizon. Thereafter, the recommendation for termination had to be approved by Human Resources Manager, Dan Birchfield, at Corizon's home office in Brentwood, Tennessee.

(Doc. # 14-7, p. 3, ¶ 8). Nalls claims this statement is contradictory to Duffell's deposition testimony, wherein she testified as follows:

> Q. As a Health Service Administrator, are you in charge of hiring employees?
> A. I am.
> Q. Are you in charge of disciplining employees?

---

[1] Notably, Nalls fails to cite to any authority for the proposition that contradictory sworn testimony may be stricken. However, it appears that Nalls is arguing that this Paragraph falls under the "sham affidavit" rule.

|   | A. | I am. |
|---|---|---|
|   | Q. | Are you in charge of firing employees? |
|   | A. | I am. |
|   | Q. | Are you in charge of maintaining a personnel file on employees? |
|   | A. | I am. |

(Doc. # 19-7, p. 8:3–8:15).

Courts may strike an affidavit, including any statement contained therein, if it is a "sham affidavit." A "sham affidavit" is an affidavit that directly contradicts previous deposition testimony. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). "An affidavit may only be disregarded as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, ***without explanation***, previously given clear testimony.'" *Id*. at 954 (quoting *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984) (emphasis added)).

In this case, Nalls's objection to Paragraph 8 fails because Corizon has given an explanation for the inherent contradiction found in her deposition testimony. In its Response to Nalls's Motion to Strike, Corizon explains that, when viewed in isolation, lines 8:3–8:15 of Duffell's deposition seem to suggest that she had the ultimate authority to fire Nalls; however, Duffell's later deposition testimony clarifies that, although she had the authority to recommend Nalls's termination, she does not have the ultimate authority to fire Nalls; that ultimate authority rests with Corizon's upper management and Human Resources Department. *See* (Doc. # 19-7, p.

114:2–116:15); *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1533 (11th Cir. 1986) (noting that when applying the sham affidavit rule, courts must consider "*everything* in the record" to determine if there is an inherent inconsistency between the sworn testimonies (quoting *Keiser v. Coliseum Props., Inc.*, 614 F.2d 406, 410 (5th Cir. 1980) (emphasis original))). Accordingly, because Corizon has provided a reasonable explanation for Duffell's inherently contradictory testimony, the court will not strike Paragraph 8 from her affidavit.[2]

Next, Nalls moves to strike Paragraphs 10, 12, and 13 from Duffell's affidavit because, she argues, they cannot be reduced to admissible form. Rule 56 of the Federal Rules of Civil Procedure ("FRCP") states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Nalls argues that Paragraphs 10, 12, and 13, all contain hearsay evidence which cannot be presented in admissible form. Those paragraphs state the following:

> 10. On May 14, 2015, an Alabama state inmate, Leo Nunez, an inmate runner for the health care unit, informed the Director of Nursing, Dorothy Price, that he had been requested to take another inmate's blood pressure, David Muse, and wanted to know from Dorothy Price, RN whether the elevated blood pressure was normal or abnormal. Inmate Nunez was concerned about the blood pressure level of inmate/patient Muse. Muse was an inmate housed in the infirmary at the Bullock County Correctional Facility.
>
> . . .

---

[2] The court also pauses to note that, to the extent that any contradiction remains between Duffell's affidavit and her deposition testimony, Nalls may challenge this testimony on cross examination.

12. Dorothy Price questioned inmate Nunez regarding why he had information about another inmate's blood pressure. The patient information should have been HIPAA protected. When asked why he had Mr. Muse's blood pressure information, inmate Nunez informed Dorothy Price that he had taken Mr. Muse's blood pressure at the instruction of Nurse Wilma Nalls.

13. When further questioned by Dorothy Price, inmate Nunez informed Ms. Price that Wilma Nalls, RN, had instructed him and inmate Vines to take vital signs of the inmates housed in the infirmary. Those vital signs included blood pressure, temperature, oxygen saturation levels, and respiratory rates. All of the vital signs taken by the inmate runners, Nunez and Vines, were vital signs that only a trained and licensed nurse are authorized to take and would have been HIPAA protected.

(Doc. # 14-7, p. 4–5, 8, ¶ 10, 12–13, 30).

Corizon responds—and the court agrees—that Paragraphs 10, 12, and 13 are not hearsay, because they are not offered for the truth of the matters asserted, but rather to show Duffell's state of mind or the general effect that Nunez's statements had on her as a listener. *See United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) ("Generally, an out-of-court statement admitted to show its effect on the hearer is not hearsay." (citing *United States v. Brown*, 441 F.3d 1330, 1358 (11th Cir. 2006); *United States v. Munoz*, 16 F.3d 1116, 1120 (11th Cir. 1994))). Furthermore, Paragraphs 14 and 15 give the basis for the challenged statements. Specifically, Corizon contends that Inmate Nunez's complaint led Duffell and Price to investigate allegations that Nalls was directing inmates to perform skilled nursing tasks in violation of official Corizon policy.[3] Therefore, the statements referred to in Paragraphs 10, 12, and 13 are not offered for the

---

[3] In addition, the court notes that the substance of Duffell's testimony in paragraphs 10, 12, and

truth of the matter asserted, but rather to show the effect that Price's and Nunez's statements had on Duffell—i.e., that Price's and Nunez's statements led them to investigate Nalls. For that reason, these statements are not due to be stricken.

Next, Nalls argues that Paragraphs 16, 17, and 20 should be stricken because they contain information from Vines that has not been reduced to a statement. Paragraphs 16, 17, and 20 state the following:

> 16. Thereafter, Ms. Price and I called inmate Vines into my office to corroborate the information that Dorothy Price received from inmate Nunez. Inmate Kevin Vines confirmed that Wilma Nalls, RN had been ordering the inmate runners to take vital signs (referenced above) from inmate/patients incarcerated in the infirmary at the Bullock County Correctional Facility.
>
> 17. Inmate Vines also informed us that nurses working in the health care unit at the Bullock County Correctional Facility were aware that Wilma Nalls was having the runners take vital signs from the inmates in the infirmary.
>
> . . .
>
> 20. We requested that Mr. Vines also provide a written statement but he refused to do so. However, Mr. Vines verbally confirmed the fact that he had been taking vital signs of the inmates at the orders of Nurse Nalls.

(Doc. # 14-7, p. 5–6, ¶ 16, 17, 20).

However, again—and as Corizon correctly argues in rebuttal—these statements are not offered for the truth of the matters asserted; rather they are offered to show Duffell's state of mind with respect to why she, and her superior, Price, initiated an investigation into Nalls for

---

13 are contained in Duffell's and Price's deposition testimony, which Nalls does not dispute is reduced to admissible form for purposes of Rule 56 of the FRCP. Therefore, even if that evidence were inadmissible, the court need not rely on it for purposes of Corizon's Motion for Summary Judgment.

violating a work rule, which ultimately became the basis for Nalls's firing, as the court will discuss more fully in an opinion on Corizon's Motion for Summary Judgment.

Finally, Nalls also argues that Paragraph 30 should be stricken because it "contains a conversation with Price about an unsigned document in which neither can be reduced to admissible evidence at trial." (Doc. # 20, p. 1).

Both of these arguments are unavailing, however. Paragraph 30 provides:

> 30. A previous Final Written Recommendation for termination had been drafted by Dorothy Price on May 4, 2015. (See attached hereto as Exhibit E). The previous Final Recommendation for Termination written on May 4, 2015 was also due to abuse of inmates/patients.

(Doc. # 14-7, p., 8, ¶ 30).

First, to the extent Nalls is arguing that Paragraph 30 references a conversation between Nalls and Price, and therefore, that it is hearsay due to be stricken, Nalls's objection is due to be denied. There is no reference to any conversation between Price and Nalls in Paragraph 30.

Second, to the extent Nalls is arguing that Paragraph 30 should be stricken because it references a document that is, itself, inadmissible, Nalls's objection is also due to be denied. Corizon correctly argues that the Recommendation for Termination document referenced in Paragraph 30 is not inadmissible, because it falls within the business records exception to the hearsay rule. Rule 803(6), Records of a Regularly Conducted Activity (otherwise referred to as the "business records exception"), provides that a statement, or record of an event, is an exception to the general rule prohibiting hearsay if "(a) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (b) the record was kept in

the course of a regularly conducted activity of a business . . . ; (c) making the record was a regular practice of that activity; (d) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and (e) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). In this case, these elements are satisfied. The Recommendation for Termination document referenced in Paragraph 30 is a personnel file, submitted by Duffell, who kept such records in the ordinary course of Corizon's business. *See E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 925–26 (11th Cir. 1990) (noting that personnel files fall within the business records exception to hearsay). Accordingly, the Recommendation for Termination falls within the business records exception to the rule against hearsay, and Paragraph 30 will not be stricken on the basis that it references a document that is inadmissible.

**B. Duffell's Second Affidavit (Doc. # 22-1)**

Nalls seeks to strike Duffell's Second Affidavit (Doc. # 22-1) in whole. Nalls argues that Duffell's Second Affidavit must be stricken because it is in direct contradiction to Duffell's prior deposition testimony and prior affidavit testimony. (Doc. # 23, p. 1). However, as mentioned previously, the court will only strike an affidavit that flatly contradicts prior sworn testimony, unless an unexplainable conflict exists between the testimonies. *See Van T. Junkins & Assocs.*, 736 F.2d at 657.[4]

---

[4] Corizon argues that the sham affidavit rule does not apply to inconsistencies between affidavits; rather that it only applies when there is an inconsistency between an affidavit and prior deposition testimony. The court disagrees. The Eleventh Circuit has applied the sham affidavit rule to alleged inconsistencies between affidavits and prior deposition testimony as well as

8

In this case, Nalls argues that Paragraphs 7, 8, and 9 of Duffell's Second Affidavit contradict Paragraph 10 of Duffell's First Affidavit. Those paragraphs state as follows:

Duffell's Second Affidavit

7. Prior to May 8, 2015, an inmate runner who worked in the Infirmary named Leo Nunez verbally reported that he had been instructed to take an inmate's blood pressure by Ms. Nalls.

8. In response to inmate Nunez's verbal report, Corizon interviewed and obtained written statements from Nurses Thomley and McNeil on May 6 and 7, 2015.

9. Prior to May 8, 2015, Corizon also interviewed another inmate runner named Kevin Vines, who also stated that Ms. Nalls had instructed him to perform skilled nursing tasks in the Infirmary.

Duffell's First Affidavit

10. On May 14, 2015, an Alabama state inmate, Leo Nunez, an inmate runner for the health care unit, informed the Director of Nursing, Dorothy Price, that he had been requested to take another inmate's blood pressure, David Muse, and wanted to know from Dorothy Price, RN whether the elevated blood pressure was normal or abnormal. Inmate Nunez was concerned about the blood pressure level of inmate/patient Muse. Muse was an inmate housed in the infirmary at the Bullock County Correctional Facility.

(Doc. # 22-1, p. 3, ¶ 7–9); (Doc. # 14-7, p. 4, ¶ 10). Nalls argues these Paragraphs are contradictory because in Duffell's Second Affidavit, she claims that Inmate Nunez reported that Nalls had ordered inmates to perform skilled nursing tasks and that Duffell began her investigation into allegations of Nalls's alleged workplace rule violation prior May 8, 2015; however, in Duffell's First Affidavit, she states that Inmate Nunez made his report to Duffell on May 14, 2015, six days after Nalls's last work day at Corizon.

---

alleged inconsistencies between affidavits and earlier affidavit testimony. *See Santhuff v. Seitz*, 385 Fed. App'x. 939, 945 (11th Cir. 2010). Accordingly, the court will not deny Nalls's Motion on that basis.

However, Corizon provides an explanation for the purported contradiction. Corizon shows that Paragraph 12 of Duffell's Supplemental Affidavit explains the inherent discrepancy between her Affidavits. Paragraph 12 of Duffell's Second Affidavit provides:

> The May 14, 2015 date reference in Paragraph 10 of my May 18, 2017 Affidavit is the date on which Nunez wrote and signed his written statement reiterating the information he had already provided in his verbal interview; it is not the date on which Nunez verbally reported that Ms. Nalls instructed him to take an inmate's blood pressure.

(Doc. # 22-1, p. 4, ¶ 12). Moreover, Duffell's deposition testimony clarifies that, first, Inmate Nunez informed Price that he was performing skilled nursing tasks at the direction of Nalls, and then, that he submitted a written complaint. Therefore, Corizon has provided a reasonable explanation for the inherent contradiction—if there was one—for the dates alleged in Duffell's affidavits. Accordingly, Duffell's Second Affidavit is not due to be stricken.

Moreover, like Nalls's objection to Paragraph 8 from Duffell's First Affidavit, to the extent that any contradiction remains between Duffell's affidavits and or between her affidavits and her deposition testimony, Nalls may challenge that testimony on cross examination.

### III. CONCLUSION

For these reasons, it is hereby ORDERED as follows:

1. The Plaintiff's Motions to Strike (Doc. # 20, 23) are DENIED.

Done this 10th day of August, 2017.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE